at all? All right. Good morning, Mr. Townsend. You have two minutes for rebuttal. You can begin whenever you're ready. Good morning. May it please the Court. Brady Townsend, on behalf of appellants. This case asks whether Vermont can impose a blanket 72-hour ban on the acquisition of firearms by persons the state concedes are qualified to purchase and possess them, citizens who have already passed every background check and satisfied every legal requirement. Could the state have added to its background check a mental health check that required some certification by a mental health practitioner? The state does not have a ban, but could it? Could it create a background check system? That involved an inquiry into mental health. I think they probably could. I'm not... Well, if they did, wouldn't that take more than three days probably to happen? Somebody walked into a gun dealer, and the gun dealer checks the computer and says, oh, I see you have no criminal record. But the state has a requirement also as part of the background check that you get checked out by some mental health practitioner. So it would be appended to the normal background check process? It would be part of the background process. I mean, New York, for example, has a much more elaborate background process than the one in Vermont. And we upheld that as constitutional. That's true. And this Court has upheld delays that are incidental to a verification process. Can I just ask about this mental health thing? I mean, you know, the Supreme Court in Rahimi is very focused on there being an individualized determination of dangerousness. It seems like if a state had a requirement that assumed everybody was dangerous until they got an evaluation before they obtained a gun, that would be a very different case and probably not okay, right? So a state might be able to deny firearms to somebody who has indications of mental instability or something, but to presume that everybody is mentally unstable and therefore needs to undergo some kind of psychiatric evaluation does not seem individualized in the way the Court has said is required. Well, I think that's what this waiting period does. It assumes that everybody is Right. That's why Judge Lynch asked the question, and that's why I was kind of surprised by your answer. But it would be, but, you know, it seems like your argument would be there needs to be a more individualized determination. So like for the drunkenness laws, they were about people who showed signs of drunkenness, right? But I don't think you would say that a state could impose a law that just kind of assumes everybody might be drunk and therefore has to sit in a drunk tank for 48 hours to make sure that they're no longer inebriated before they obtain the gun, right? Right. And Judge Menasche, I may have misunderstood Judge Lynch's question. I understood it as a question as to whether the state could have its own verification and background process to see if someone is eligible to possess firearms. But your qualification could be that there isn't something in their record that indicates mental instability. There isn't a prior adjudication of it, right? Right. I think the Federal system already imposes that sort of check on eligibility. I'm puzzled by the notion of assuming that everyone is mentally unstable. When you say that the applicant for a gun license needs to have a background check to show that he's not a criminal, we're not assuming that everyone is a criminal. We're checking to see whether they are. We're checking to see whether they're eligible to possess. We're checking to see whether they, and the ineligibility is some sort of indication of dangerousness that typically takes the form of some kind of criminal record. But we don't say, we assume everyone's a criminal, because why would we assume that? Why would we have to ask? Why would we have to check? We're checking precisely to find out. So I'm not sure I understand the difference that this, that some hypothetical requirement that we make some verification of somebody's mental stability would be assuming that everyone is mentally unstable. It would be imposing a requirement that we determine whether they're mentally stable or not. But we're not doing that here. What we're doing is imposing a delay for the sake of delay. Well, it's not for the sake of delay. It's for the sake of, in case someone is mentally unstable, maybe they would think over the issue of suicide. And why is a three-day waiting period imposed for that purpose something different than what could amount to a month-long delay doing a more elaborate background check than just a simple criminal record check? But they're not doing that. They're not doing anything. They're just, there's nothing being administered. There's nothing being reviewed. It's just treating everybody as though they have a mental illness. So if they impose something more onerous, that might be okay, so long as it required some steps to be taken. If it was part of a verification process, an eligibility process, this Court has approved those sorts of delays when it's tied to... But it's incidental to the actual verification. I guess the answer to this question is, isn't the answer to this question that you wouldn't resolve the idea in the abstract? It's just a question about whether we have a tradition of subjecting somebody to a mental health evaluation or something analogous to it before allowing them to purchase a gun, right? What's happening in the background check, Judge Menasche, as you know, is that they're looking to see if someone is eligible to exercise the right. And I think that this Court in NYSFA v. James, Gazzola, and Giambalvo were looking at just that. Is the State doing something? Is something being administered here in what's happening? I mean, you get the intuition that Judge Lynch is suggesting, which is, if we could subject you to a mental health evaluation, that's not very different from sort of saying, well, you know, you might be acting impulsively, and so therefore we're going to require everybody to engage in a cooling off period. I mean, I would have thought the objection was more of an individualized determination. So in Rahimi, it's about somebody who has a history of domestic violence, right? But there's been an adjudication of that. It seems like it would be very different if the State passed a law that said, well, anybody who has a domestic partner and is trying to get a gun needs to first undergo a site visit and an interview with the partner before the gun can be transferred, right? That would be more of a burden and it would be less individualized. It would be less individualized. I don't know. I mean, I think the problem with this waiting period is that it's been assessed as temporally rather than the scope. And I think Ortega raised that issue when it talked about there's no limiting principle to this waiting period. Oh, I see. So what you're saying is, well, if there's reason to do an evaluation for impulsiveness, maybe you could undergo that evaluation. But the State says regardless of whether we're confident that you are of sound mind or whatever, nevertheless, there's still just delay for the sake of delay. The court in Newin, when it was evaluating the one gun a month law in California, raised the problem of just looking at something temporarily. Limiting a constitutional right based on time was unacceptable. And the court said it was unaware of any other constitutional right where that would be acceptable. And it found that there was a meaningful constraint on the right, on the Second Amendment right, which is the same doctrine that this court used. This question, I mean, I know that we don't do interest balancing anymore, but just as a thought experiment, I was thinking about how this would fare under the earlier regime. So it might be that this kind of burden on purchasing a firearm would be subject to intermediate scrutiny or something like that. Does it seem like it would be over-inclusive? So if your concern is impulsive gun purchases where somebody might engage in violence or suicide, there is a class of people who have a whole bunch of guns already. And so at the very least, there's a less restrictive alternative where you could narrow it to first-time gun owners or something like that. I guess if we were still allowed to do interest balancing, they might be allowed to... I guess my thought is just if it's sort of clear that under the prior regime it's infirm, it would be pretty surprising if the Bruin regime, which is generally understood to be more protective of Second Amendment rights, would be more permissive, right? I can't imagine under the Bruin regime where you introduce... The lower court engaged in interest balancing. The court in Ortega was concerned about interest balancing. The court in Newin was concerned about interest balancing. Because if three days is okay, why not six days or 30 days? I'm sure the state could conjure up an expert that would come in and say that 180 days would be a really good policy. Can I just go back to Judge Lynch's hypothesis to understand what your position is? So if the state said, we're going to do some kind of check for mental health, we're going to check various records in the state, and it takes three days, let's just assume it takes... It can't be done instantaneously. It's going to take three days for them to check to see whether or not there's any red flags for mental health. That would be okay? It would be okay if the state had its own licensing process, where the state was trying to see if the person was an eligible person. The difference here is they've already made that determination. And the waiting period is imposed just for the sake of delay. And there's... But they have eligibility, and they're still concerned about mental health. That's the legitimate thing to be concerned about, right? But they aren't checking it. They aren't checking mental health. It's the fact that they're not doing anything affirmative. They're just waiting. They're just waiting. So suppose... Let me give you another hypothetical. Suppose... You would agree that, like, gun safety courses, they're constitutional, right? Saying somebody, before they get a gun, has to take a safety course. Is that okay? I would agree this Court has approved safety courses. So there's a... Not a gun safety course, but a mental health course, where someone, before the person had gone, had to go in, and there was some discussion about, if you have suicidal tendencies, you should seek help. That would be okay. I would have to... The devil would be in the details, Your Honor. It's a two-hour course, where they're going to have people come in before they give them a gun, and before they get a gun, they have to do that. Wouldn't that be consistent with making sure that it's going to be a law-abiding, responsible person who's getting the gun? It may be, but that's not what's happening here. This is simply the delay on the... Isn't the way the Bruin framework... I mean, we're just talking about all these things in the abstract, but isn't the way the thing would work... I mean, earlier you said the prior cases where we say a delay is okay, the delay is incidental to something else the State is doing. So then the question would be, is it permissible or not for the State to deny firearms to somebody who fails some kind of mental health check? And that would entail the Bruin analysis about whether there's an analog. But you would say, if the delay is incidental to that, everything turns on whether that is permissible, right? But here the delay is imposed as a blanket matter, not in service of something else, so it's a direct burden on the ownership, right? If it was in service of verification, Judge Menasche, if it was part of a verification process to see if that person was eligible, then it would fall under the meaningfully constrained test that this Court employs, and also abusive ends test. And the Court would look at it to see if it infringed on the second measure. And there's some conditions of eligibility that might not be okay, right? Like they might impose all sorts... Like they might say only people of a certain political affiliation can own guns, like there probably wouldn't be a historical analog for that. So like there would be a substantive challenge to the condition, but the point is that if the delay is incidental to administering the condition, then everything turns on the permissibility of the condition. But here you're saying there just is an automatic delay regardless of whether you've person is qualified or not? There's no determination, and under this Court's law, that would plug into the meaningful constraint test and to see if it was being put to abusive ends, and then it would go into Bruin Step 2 if it was found to infringe on the Second Amendment, the core right. All right, thank you. Good morning, Your Honors. May it please the Court, Bridget Acy for the defendants at police. This Court should affirm the District Court's refusal to enjoin Vermont's three-day waiting period for firearms acquisitions. Plaintiffs have not shown a likelihood of success on the merits because they cannot show that this brief delay in acquiring a firearm is a meaningful constraint on protected Second Amendment rights. They also have failed to show irreparable harm. Why is that the analysis? So like, you know, it's got to be that if you have the right to keep a firearm, you can acquire the arms, right? So, Your Honor, this Court has addressed this point in both Vereen and in James. The Court has recognized that the Bruin analysis has two steps. The first step under Bruin is, does the challenge law implicate conduct protected by the plain text of the Second Amendment? And in both Vereen and in NYSF v. James, the Court held that commercial firearms regulations are presumptively constitutional and regulations under the means of a prior law. And I give it away to someone, I'm bound by the same requirement. If it's a gift outside of the immediate family and not to prevent immediate harm, then the gift has to be facilitated by a federally licensed firearms dealer and does fall here. But that's really a slice of a slice of the application, and there's no challenge here as applied challenge to that. There are several slices that are problematic, right? As Judge Menasche asked, at least one of the plaintiffs here alleges that he is a licensed firearm owner and has an arsenal at home, and he wants to add to that arsenal by buying another gun. And he has to wait three days because he may be impulsively buying that gun to kill himself, when he's got a whole gun safe filled with guns at home that if he wanted to kill himself, he could do it. The waiting period does apply to his purchases as well, but again, it's in that situation, it's somewhat difficult to see how the waiting period is meaningfully constraining his court-protected Second Amendment right, which is the right of armed self-defense. And to go back to Vareen and the other one. It doesn't protect his particular right to own this particular gun that he wants to buy? Is that the point? Well, again, the test under Vareen and NYSF v. James is for regulations that impact acquisition, which is, the Court has said, not in the plain text of the Second Amendment, but is an ancillary right. The test is different. I mean, like, so I kind of get Vareen. So Vareen, it's a regulation on the way gun shops are supposed to be set up, right? It's not really a direct regulation on the right, the arms bearer, right? It's like, so we're evaluating whether the spillover effects of how a state regulates the commercial enterprise that sell guns might implicate the eventual purchaser. So it's sort of an indirect burden, right? I'm trying to trust my memory. I believe that's describing Gazola, Your Honor, and that Vareen was the federal restriction on our state. Oh, right. So Vareen is the one about the interstate trade. Well, let me just actually start with Gazola, right? So that's where we get this idea. So it's sort of indirect burdens. And you get how not everything that's indirect is actually a burden of the right, right? And then we have the state where there's the delay associated with administering the background check, but the background check itself is not challenged. And so there, the delay is also incidental to something that is admittedly okay, right? In James? Yeah, in James. In James, as well as in Jambo. And so then in this other case, the Vareen, right? I don't know if it's right or not, but it says, look, the main way to get guns is just unimpaired. And so this is some other avenue. Maybe that's not right or not. But this case that we have here, right? It's a regulation that applies to the actual transaction where the arms bearer obtains the gun. Isn't that just a burden on procuring, like a direct burden on procuring guns? And if we start talking about whether it's meaningful or not meaningful, then aren't we just doing an analysis about whether it's really important enough to cause the person a delay or not? And then we're doing a kind of interest balancing that we're not supposed to do. No, Your Honor. I disagree that this Court's meaningful constraint test is interest balancing. And it is not looking at a means-end analysis. It's looking at whether... So what is the analysis that we do? So certainly, it seems to me in the First Amendment context, if we said, all right, the city decides whether you can have a permit to conduct a protest, but we're very worried that you might say something you'll later regret. You might defame somebody. You might, like, inspire people to violence. We're going to have a cooling-off period where, like, even if we know that you're eligible for a protest permit, we're going to wait, you know, a week before you're allowed to do your protests. We probably wouldn't tolerate that because we say a delay of even a little bit for constitutional rights is unacceptable. So if we have that principle in the Second Amendment context, if we're talking about whether it's a meaningful burden or not a meaningful burden, are we just sort of deciding whether it's more important for the person to have a gun or it's more important for the government to accomplish its policy objective? So, Your Honor, I think two responses to that. So first, with respect to the analogy to First Amendment rights, although those analogies can only go so far in this context because this Court has upheld, as has the Supreme Court, and certainly this Court upheld regulations of the right to carry arms through licensing processes and restrictions on where they can be carried that clearly are not analogous to the way that First Amendment rights are. So the analogy really doesn't say that, like, exactly what happens there has to happen in the Second Amendment context. I'm just saying you could understand this that way. You could say, actually, you know, any kind of delay that isn't, that isn't, you know, justified by historical analog or so on is a violation of the right. And so, therefore, that is serious. But once you enter the meaningfully constrained analysis, then you're kind of balancing, you know, the right to exercise the Second Amendment rights against what the State is trying to accomplish. I disagree, Your Honor, that the meaningful constraint test is a balancing test. And again, with respect to the delay point, this Court has held in multiple contexts that there, including in Gianvolvo, that there is not an immediate right to acquire a gun under the Second Amendment. The delay is incidental to some other lawful measure that is based upon some type of individualized determination, like a background check or something like that, that's going on. We don't have that We've never said you can delay, you know, up to 30 days for whatever reason you want, right? You would agree with that, right? Any delay of 30 days is a meaningful constraint. You would agree with that, right? I agree, Your Honor, that the Court has not said that delay for any purpose is permissible, but in Gianvolvo What is the lawful measure that this delay is linked to? If we assume that it has to have some, something has to be going on, that just delay for delay is not enough, what would it be? I mean, the legislature did not enact this delay for no purpose. The legislature enacted this waiting period because there is good science that shows that interrupting the determination, Your Honor, it's making everybody wait without any individualized determination, right? You can't point to any other measure similar to this where the Supreme Court has suggested that that's okay, right? I can't point to a U.S. Supreme Court precedent on this point, Your Honor, but I would say that, for the example of this Court's recent decision in Zerker, the Supreme Court's decisions have really only addressed much broader, overly restrictive rights, the rights to bear arms, the right to carry and to bear arms. And here, it's a very short delay. And as the First Circuit, I think the First Circuit got this point right in the comparison to licensing requirements, as we argue in our brief, that the how and the why here are very similar. It's a screening tool. And as the First Circuit said in Beckwith, when States impose, instead of a waiting period, impose a licensing requirement, those, those delays apply to everyone. So there's no individual assessment for this. It's not a screening tool. It's not to determine whether this person is eligible to have the gun, because the delay applies to everybody the same way, right? It applies to everyone in the same way, Your Honor, in the same way that the delay is associated with background checks and licensing requirements also apply to everyone. Isn't the delay in the background check incidental to doing the background check? I mean, maybe there's something about the background check that is permissible or impermissible, but that's a separate question. If the delay is incidental to something that's permissible, then the delay itself is not the burden. But this is an automatic delay, right? It's an, it's, it's an automatic delay that, again, is intended to interrupt what is a real problem, which is the impulsive acquisition of firearms that does have fatal consequences. So it is serving a purpose. It's very minimal. And I think it, just to take, if I could just take a step back in the understanding of this Court's test, which is the meaningful constraint test, this Court has upheld in New York a package of restrictions that require, that ban open carry, require a license for concealed carry, has held that delays of up to 30 days to get the license are not presumably unconstitutional, has upheld training courses, has upheld restrictions on sensitive places that include mass transit, Times Square, and it's upheld. But these are all different, these are all different kinds of things. I understand, Your Honor. I'm sorry. Different rationales and they have different problems associated with them and different kinds of evaluations. But all of the licensing, I think one of the things that is an issue here is that unlike the limits at issue in Gazzola, isn't this really, I mean, it imposes a requirement on the seller, but that's just the flip side of a restriction on the buyer. It's, in that respect, like a background check or like some other kind of attribute of a must-grant licensing scheme, it impedes the ability of the buyer to get a gun in a direct way as opposed to just, you know, if you impose an insurance requirement on a gun shop, maybe one out of five gun shops goes out of business and that makes it that much harder for somebody to buy a gun or something like that. That's very indirect. I agree. It's a direct restraint on somebody's ability to buy a gun, isn't it? I mean, it's only direct in the sense it's at a single moment in time. Yeah. And Gazzola recognized that convenience was not an inconvenience. So isn't your – don't we – wouldn't we have to do the analysis this way, which is to recognize that this is a direct effect on the right to bear arms? And then the question is, is it sufficiently analogous to background checks, which have been upheld as consistent with our tradition, that it falls under the same basic rubric? We don't agree that the Court has to reach Step 2, given the Court's application of the Meaningful Constraint Test, but we certainly agree that the statute should be upheld under Step 2. And if I could just go back to my holistic point, and I apologize if I took too long to get into it, but my point was, in Vermont, in comparison to New York, this is essentially the requirement. So when looking at how the Meaningful Constraint Test. And you don't need a license to carry. You can open carry. You can concealed carry. Those are different things. But just in terms of, I decide I want a gun for perfectly legitimate reasons. I'm not going to carry it in place, and I'm not allowed to carry it, and all those other things. Just I want to get a gun. What you're saying, essentially, is it's still easier and quicker for me to buy a gun in Vermont than it is for me to buy a gun in New York under the conditions that have been upheld. That was the point I was attempting to reach, in terms of the ability to exercise their rights. There is no meaningful constraint here. It comes down to a matter of convenience with this brief delay, which the legislature had good reason to impose. If I could, I realize that my time is up, if I could just briefly address the irreparable harm point. But just in terms of the analogs, I don't know if I heard an answer to the point that I think Judge Bianco made, which is that the analogs about whether somebody is drunk or whether an incidental delay to a background check, those are determinations about whether this person is in the category of people that are not eligible to have a gun, whereas here it's a blanket delay that applies to everybody. I think he was suggesting that there isn't an analog for that kind of a burden. So what's your response to that? We don't dispute that there's not a historical twin from the 18th or 19th century, but that is not what the test requires. It's about analyzing. It's like a historical cousin. It's a historical cousin and it's analyzing, it's analogizing from principles. With respect to irreparable harm, if I could just make two quick points. First of all, this case was stayed at the request of plaintiffs. The appeal was stayed voluntarily on appeal for a year. There was also no evidence in the record of any plaintiff who was facing irreparable harm from this brief waiting period. They could have purchased guns a hundred times over while the appeal was pending and any number of weapons. We hear again that they failed to make out the case before an injunction. Well, we've always said for irreparable harm that the deprivation of a constitutional right, even for a limited period of time, is irreparable harm. And so if we think that they've have, like, let's say we had thought they had a likelihood of success, which means that it's, it is a, they've shown a likelihood of a deprivation of a constitutional right, why wouldn't that establish the irreparable harm? Well, this Court said in Lamont that it was not the case that every allegation of a constitutional violation necessarily amounted to irreparable harm. The Court did not end up deciding Lamont on that point, but that is, that was what the Court recognized. And I think here, particularly where the plaintiffs have agreed to a stay of the case and the district court asked to have this appeal stayed for a year and can't point to any plaintiff who is imminently threatened with harm by a waiting period that has elapsed a hundred times over while the case is pending, that this is an exceptionally weak case for showing irreparable harm. The case could have proceeded in the district court on the merits and have been resolved on the merits and the ordinary course. Roberts, thank you. Thank you, Your Honor. Mr. Thompson, you have two minutes. Thank you, Your Honor. Just a couple of points. The waiting period is not a commercial regulation because it does not involve a condition or qualification on the purchaser or seller. There are no conditions that can be met to escape this law, and there is, there's it's not qualified because it applies to everybody. This Court said in James that laws imposing conditions and qualifications on the commercial sale of arms are laws that impose modest administrative burdens. A waiting period is not an administrative burden. There is no administration happening. In James and Gimbalvo, things are being administered. And also on the meaningful constraint point in James, it was instantaneous check, right, in terms of that's why in James case we found that it was not a meaningful constraint because it was instantaneous, right? Instantaneous, but we get in trouble when we measure things by time because that invites an interest balance, and we can objectively measure things, but in this case, it should be measured by scope because it totally deprives the citizens of Vermont of their Second Amendment rights. So it should be measured by scope for step one or step two or both? So what's the point you're making? Well, for both. In step one, when we're looking at, the problem that Beckwith ran into at the appeals level was that they just measured it by time. They didn't measure it by the infringement on the right. The same thing happened with the trial court here. In Newin and Ortega, the courts properly measured the scope because they recognize that if they're measuring how long the deprivation is, in Newin, it was one gun per 30 days, and they said, well, that's, first of all, you're entitled to arms, not arm. I mean, just in terms of how the scope point cashes out, is this your argument, like at step one, obtaining a firearm is just covered by the text because you have to be able to obtain it to keep it barren, so it's a necessary predicate act, right? I think common sense dictates that. And then on the second one, what's the relevance of the scope? The relevance of the scope is there isn't a historical analog because there isn't a historical regulation that denies obtaining the firearm to all people as distinct from some kind of individualized determination that you meet at qualification. There is no historical analog that matches a waiting period, a purposeless waiting period. There's nothing even remotely like it until the 1990s when we had the Brady Act, and that only lasted for four years until NICS was put in place, and at the federal level. But, you know, it's not a purposeless waiting period, right? The state identifies a purpose, they say the reason is to prevent impulsive violence. Wouldn't your position be, like, there isn't the tradition of preventing impulsive violence in this way, and so that just is not a permissible... restriction? I think that forces us back into interest balancing, and... No, I'm not saying that it's not tailored to the government interest in preventing impulsive violence, I'm just saying this doesn't look like any historically, any historical regulation of firearms ownership, either in purpose or restriction. Well, nothing is happening on the government side. It is delay for delay's sake, and that's what Ortega found problematic, that's what Nguyen found problematic. There's no objective way to measure, if three days is okay, why not six days, or 60 days? There's no limiting principle to this. All right. Thank you. Thank you both. Thank you.